UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES OF AMERICA,

Plaintiff,

v.

JIMMY ANTHONY INDARTE,

Defendant.

CASE NO. CR17-5554 BHS

ORDER GRANTING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE AND GRANTING PARTIES' MOTIONS TO SEAL AND FOR LEAVE TO FILE OVERLENGTH BRIEFS

This matter comes before the Court on Defendant Jimmy Indarte's ("Indarte") *pro se* motion and amended motion to reduce sentence re Section 404 of the First Step Act, Dkts. 68, 76, Indarte's motions to seal and for leave to file overlength briefs, Dkts. 74, 75, 81, and the Government's motion for leave to file overlength brief, Dkt. 79. The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby grants the motions for the reasons stated herein.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Indarte is a United States Army veteran and had resided on the Joint Base Lewis McChord military installation with his civilian and servicemember spouse, "S.I." Dkt. 48 at 4. In August 2017, Indarte and S.I. had decided that they would pursue a divorce but

agreed to cohabitate with one another and their minor child until they could complete their separation. *Id.* On August 25, 2017, S.I. discovered recordings on Indarte's cell phone of Indarte engaging in sexual acts with S.I. without her consent or knowledge. *Id.* S.I. promptly contacted law enforcement. *Id.*

On December 14, 2017, a federal grand jury indicted Indarte for two counts of sexual abuse in violation of 18 U.S.C. §§ 2242(2)(B), 2246(2) and (7). Dkt. 1. On March 7, 2019, Indarte pleaded guilty to one count of sexual abuse as charged in the Indictment. Dkt. 48. As part of the plea agreement, the Government and Indarte agreed to recommend a forty-eight month prison sentence. *Id.* at 5.

On June 3, 2019, the Court sentenced Indarte to forty-eight months of imprisonment as the parties had recommended followed by eight years of supervised release. Dkts. 65, 66. Indarte is currently serving that sentence at Federal Correctional Institution, Coleman ("FCI Coleman") and is projected to be released on June 16, 2021. Dkt. 80 at 4.

On August 4, 2020, Indarte filed a *pro se* motion for compassionate release. Dkt. 68. On August 13, 2020, the parties stipulated to allow Indarte to file an amended or substitute motion. Dkt. 71. On September 14, 2020, Indarte filed a supplemental motion for compassionate release, Dkt. 76, a motion for leave to file overlength briefing, Dkt. 74, and a motion to seal, Dkt. 75. On September 25, 2020, the Government responded and filed a motion for leave to filed overlength briefing. Dkt. 79. On October 5, 2020, Indarte replied, Dkt. 82, and filed a motion for leave to file overlength briefing, Dkt. 81.

## II. DISCUSSION

### A. Motions to Seal and Motion to File Overlength Response

Regarding the motion to seal, Indarte asserts that the exhibit he submitted in support of the motion contains Indarte's personal medical information and should remain under seal. Dkt. 75. The Court agrees that this information should remain confidential and therefore grants the motion. The Court also grants Indarte's and the Government's unopposed motions to file supporting and opposition briefs, respectively, in excess of the twelve-page limitation imposed by Local Criminal Rule 12(b)(5) of the Rules of the United States District Court for the Western District of Washington.

### B. Motion for Compassionate Release

Pursuant to 18 U.S.C. § 3582(b), a judgment of conviction that includes a sentence of imprisonment "constitutes a final judgment and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (internal quotations omitted). Those limited circumstances are provided under 18 U.S.C. § 3582(c)(1)(A)(i). Effective December 21, 2018, the First Step Act of 2018 amended § 3582(c)(1)(A) by adding a provision that allows prisoners to directly petition a district court for compassionate release:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after

> considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction;
>
> ***
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; . . . .

18 U.S.C. § 3582(c)(1)(A). Accordingly, a court may reduce a sentence upon motion of a defendant provided that: (1) the inmate has either exhausted his or her administrative appeal rights of the Bureau of Prison's ("BOP") failure to bring such a motion on the inmate's behalf or has waited until 30 days after the applicable warden has received such a request; (2) the inmate has established "extraordinary and compelling reasons" for the requested sentence reduction; and (3) the reduction is consistent with the Sentencing Commission's policy statement. *See id*.

The Sentencing Commission's policy statement referenced in 18 U.S.C. § 3582(c)(1)(A)(i) provides, in relevant part:

> [T]he court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1)(A) Extraordinary and compelling reasons warrant the reduction;
>
> ***
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

United States Sentencing Guidelines ("USSG") § 1B1.13.

**1. Extraordinary and Compelling Circumstances**

Recently, Judge Thomas S. Zilly provided a non-exhaustive list of factors federal courts have considered in determining whether a defendant has extraordinary and compelling reasons for compassionate release in the context of COVID-19:

> (i) whether the inmate is at higher risk because of his or her age and/or race, *see United States v. Young*, No. CR19-5055 BHS, 2020 WL 2614745, at *3 (W.D. Wash. May 22, 2020); (ii) whether the inmate has one or more, medically-documented, chronic health conditions that render him or her more vulnerable to COVID-19, *see United States v. Locke*, No. CR18-0132 RAJ, 2020 WL 3101016, at *4 (W.D. Wash. June 11, 2020) (observing that the movant's health issues were "not merely self-diagnosed," but rather "medically documented and verified"); *United States v. Rodriguez*, No. 2:03-cr-00271-AB-1, 2020 WL 1627331, at *7 (E.D. Pa. Apr. 1, 2020) (inmate with type 2 diabetes, obesity, hypertension, and liver abnormalities was in a "higher risk category"); (iii) the fatality rate for individuals with similar health conditions as compared with the overall fatality rate for COVID-19, *see id.* (summarizing COVID-19 fatality rates); *United States v. Pippin*, No. 16-0266, 2020 WL 2602140, at *1 (W.D. Wash. May 20, 2020) (granting a motion brought by a defendant suffering from pancytopenia, which is associated with an "over fivefold enhanced risk of severe COVID-19"); (iv) whether the inmate has previously tested positive for the coronavirus that causes COVID-19 and, if so, whether the inmate suffers from any long-term effects of the disease, *see United States v. Reynolds*, No. 2:18-cr-00131-RAJ, 2020 WL 3266532, at *3–4 (W.D. Wash. June 17, 2020) (denying a motion for compassionate release brought by an inmate who recovered from and was "not suffering from any reported lingering symptoms" related to COVID-19); and (v) whether the inmate's release is expected to reduce the risk of him or her contracting COVID-19, see *United States v. Sandoval*, No. CR14-5105RBL, 2020 WL 3077152, at *5 (W.D. Wash. June 10, 2020) (declining to release a defendant to a situation that "would likely place him at greater risk").

*United States v. Grubbs*, No. CR16-228 TSZ, 2020 WL 3839619, at *2 (W.D. Wash. July 8, 2020).

The Court finds these factors useful and instructive, and they are consistent with the analysis of extraordinary and compelling reasons the Court has engaged in with recent COVID-19 cases. *See, e.g., Young*, 2020 WL 2614745 at *3 (a 64-year-old African

American defendant who suffers from hypertension and chronic kidney disease presented extraordinary and compelling reasons); *United States v. Lint*, No. CR18-5152 BHS, 2020 WL 4698815, at *2 (W.D. Wash. Aug. 13, 2020) (a defendant housed at a federal correctional institution that had only two inmates infected with COVID-19 did not present an extraordinary and compelling reason); *United States v. Gray*, No. CR16-5600 BHS, 2020 WL 5759792, at *2–3 (W.D. Wash. Sept. 28, 2020) (a relatively young female defendant with a Body Mass Index of 32.1, while obese, did not present sufficient evidence of extraordinary and compelling reasons without additional evidence of other risk factors). The Court has discretion to consider the factors provided by Judge Zilly in determining whether Indarte has presented extraordinary and compelling reasons.[1]

Here, Indarte asserts that he suffers from three chronic medical conditions that negatively impact his health and increase his vulnerability to severe complications from COVID-19L: he has a Body Mass Index ("BMI") of 39.43, Dkt. 76 at 7; he is currently diagnosed with Atopic Dermatitis and unspecific current Psoriasis, G6PD (a blood disorder), and herpes, *id.* at 6; and Indarte suffers from major depressive disorder and

---

[1] In the application of USSG § 1B1.13, the Commission has described three categories of potentially "extraordinary and compelling reasons," namely medical condition, age, and family circumstances, *see* USSG § 1.B1.13 cmt. n.1(A)–(C), as well as a "catch-all" provision, *id.* cmt. n.1(D), which "opens the door" to considering factors other than those specifically enumerated, *United States v. McPherson*, 454 F. Supp. 3d. 1049 (W.D. Wash. 2020). However, USSG § 1B1.13 has not been updated since the passage of the First Step Act of 2018, and district courts have largely found that the Commission's list of extraordinary and compelling reasons is not binding, but rather helpful guidance. *See United States v. Almontes*, No. 3:05-cr-58 (SRU), 2020 WL 1812713, at *3 (Apr. 9, 2020 D. Conn.) (providing a list of cases from around the country on whether the Commission's list is binding). The Court therefore concludes that, given the "catch-all" provision and the non-binding status of the comments to USSG § 1B1.13, it has discretion to construe the meaning of extraordinary and compelling reasons. *See Grubbs*, 2020 WL 3839619, at *2 n.2.

Post Traumatic Stress Disorder ("PTSD"), *id*. According to the CDC, obesity, i.e. a BMI between 30 and 40, increases the risk of severe illness from COVID-19.[2] Indarte additionally presents evidence that the mental illness Indarte suffers from have been shown to impair immune function and heighten vulnerability to viral infection. *See* Dkt. 76-3, Exhibit C, Sapolsky Declaration on Mental Health. Moreover, while the Government contests that Indarte's other conditions do not constitute extraordinary and compelling reasons to warrant reduction, it does concede that his obesity alone does provide a basis to consider a reduction in his sentence. Dkt. 80 at 9.

The Court is persuaded that Indarte has established extraordinary and compelling reasons to warrant reduction of his sentence. Even though Indarte is twenty-nine years old and FCI Coleman has not seen a massive COVID-19 outbreak compared to other federal correctional institutions, the Court finds that Indarte's medical conditions, taken together, increase his risk for a severe or deadly infection of COVID-19. His obesity is recognized by the CDC as a medical condition that increases the risk of severe infection, and his other underlying, chronic medical conditions only add to that risk. The Court therefore finds that Indarte has established extraordinary and compelling reasons to warrant a reduction of his sentence.

---

[2] Center for Disease Control and Prevention, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last updated Oct. 6, 2020).

**2. Public Safety**

Once a defendant has established that extraordinary and compelling reasons exist to warrant release or a reduction in sentence, the defendant must also show that they no longer present a danger to the safety of any other person or to the community. USSG § 1B1.13(2). In making this determination, the Court looks to the nature and circumstances of Indarte's underlying offense, the weight of evidence against him, his history and characteristics, and the nature and seriousness of the danger his release would pose to any person or the community. *See* 18 U.SC. § 3142(g).

Regardless of how the Court decides this motion, Indarte is scheduled for release in June 2021—only eight months away. Concerns for public safety are diminished because Indarte will be released in the coming months even if the Court denies his motion for compassionate release. The Government argues that Indarte still presents a risk to S.I. and to the public at large but fails to explain the risk. The Court acknowledges that the crime Indarte committed was extremely serious and will have a lasting, detrimental impact on S.I., but Indarte has been approved to be released to his father's home in North Carolina. Dkt. 76 at 14. There will be extreme physical distance between Indarte and S.I., and there are no contact provisions in place to prevent Indarte from contacting S.I. Dkt. 66 at 5. Therefore, having considered the factors set forth by 18 U.S.C. § 3142(g), the Court finds that Indarte would not pose a danger to the safety of any other person or to the community upon release.

**3. 18 U.S.C. § 3553(a) Factors**

"Having found that that Mr. Cosgrove's age and health constitute extraordinary and compelling reasons warranting compassionate release and that he poses no danger to others or to the community, the Court must now consider the factors set forth in 18 U.S.C. § 3553(a)." *United States v. Cosgrove*, CR15-230-RSM, 2020 WL 1875509, at *4 (W.D. Wash. Apr. 15, 2020) (citing 18 U.S.C. § 3582(c)(1)(A); USSG § 1B1.13). The relevant factors include (i) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (ii) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to adequately deter criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"; (iv) the sentencing guidelines; and (iv) "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a).

The Court applies the § 3553(a) factors in considering a defendant's sentence, and the Court's consideration of these factors has changed little since Indarte's sentencing. Indeed, the majority of factors weigh against compassionate release. For example, sexual assault is a horrendous act that has substantial adverse effects on the victim and her family and support system, and releasing Indarte would clearly frustrate the purpose of deterrence, both general and specific. On the other hand, the Court finds that the factor

relating to the "need for just punishment" has dramatically shifted since sentencing. The lock-down measures prisons across the country like FCI Coleman have undergone to mitigate the spread of the pandemic have made confinement much more punitive than was contemplated at sentencing. All visitations have been suspended at FCI Coleman,[3] and BOP programs have stopped, except for those required by law.[4] This factor has much greater weight when balancing it with the other factors and when considering how much of his sentence Indarte has served. After considering all the factors, including the relatively short remaining time on his sentence, the Court concludes that Indarte has established an entitlement to warrant a reduction of his sentence from imprisonment at FCI Coleman.

Pursuant to 18 U.S.C. 3582(c)(1)(A), if the Court determines that a reduction in sentence is appropriate, the Court may "impose a term of . . . supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment." Pursuant to this authority, the Court reduces the defendant's term of imprisonment to time served, and imposes a new, additional term of supervised release to run through the unserved portion of defendant's original term of imprisonment, from the date of his release to until his current calculated release date of June 16, 2021.

---

[3] Federal Bureau of Prisons, *FCI Coleman Low*, https://www.bop.gov/locations/institutions/col/index.jsp (last visited Oct. 9, 2020).

[4] Federal Bureau of Prisons, *BOP Modified Operations*, https://www.bop.gov/coronavirus/covid19_status.jsp (last updated Oct. 8, 2020).

## III. ORDER

Therefore, it is hereby **ORDERED** that Indarte's motion to seal, Dkt. 75, motions for leave to file overlength briefs, Dkts. 74, 81, and the Government's motion for leave to file overlength brief, Dkt. 79, are **GRANTED** and that Indarte's motion for compassionate release, Dkts. 68, 76, is **GRANTED** as follows:

1) Indarte's term of imprisonment imposed is reduced to home confinement for the remainder of his sentence;
2) Indarte shall be released from the custody of the BOP fourteen days after the entry of this Order to his approved release address in the Middle District of North Carolina;[5]
3) Indarte shall comply with all the other terms and conditions of supervised release set out in the original sentence and judgment dated June 3, 2019, Dkt. 66;
4) During his increased period of supervised release directed by this Order, Indarte shall abide by all conditions and terms of the location monitoring home detention program for the duration of the new, additional term of supervised release; at the direction of the probation officer, Indarte shall wear a location monitoring device which may include GPS or other monitoring technology and

[5] The Government and the United States Probation Office request this timeline for release. *See* Dkt. 80 at 13. Indarte requests that BOP administer a COVID-19 test and only if his test is positive should he move to a quarantine unit for the fourteen-day period. Dkt. 82 at 8. The Court finds that adherence to the recommended BOP protocol for release is appropriate here. *See* Federal Bureau of Prisons, *BOP Modified Operations*.

follow all program procedures specified by the probation officer; Indarte shall pay for the location monitoring services as directed by the probation officer; and

5) Indarte shall contact the United States Probation Office in Seattle and/or the Middle District of North Carolina within 24 hours of his release and follow its instructions.

Dated this 14th day of October, 2020.

BENJAMIN H. SETTLE
United States District Judge